**Electronically Filed
Supreme Court
SCAP-15-0000440
14-DEC-2017
09:08 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellee,

vs.

CHRISTOPHER DEEDY,
Petitioner/Defendant-Appellant.

SCAP-15-0000440

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CAAP-15-0000440; CR. NO. 11-1-1647)

DECEMBER 14, 2017

RECKTENWALD, C.J., McKENNA, POLLACK, AND WILSON, JJ.,
WITH NAKAYAMA, J., DISSENTING

OPINION OF THE COURT BY POLLACK, J.

This is an interlocutory appeal from the orders of the

Circuit Court of the First Circuit (circuit court) denying

defendant Christopher Deedy's motions to dismiss with prejudice

the charges against him.  The motions sought to preclude a third trial in this case based on federal and state constitutional grounds, state statutory provisions, and the inherent power of the trial court.  We affirm.

## I. FACTS AND PROCEDURAL HISTORY

In the course of their altercation on November 5, 2011, Christopher Deedy fatally shot Kollin Elderts (the deceased) at a fast food restaurant in Waikīkī.  Deedy was indicted by a grand jury on November 16, 2011, charging him with murder in the second degree (Hawaii Revised Statutes (HRS) §§ 706-656 (1993 & Supp. 1996) and 707-701.5 (1993)) and carrying or use of firearm in the commission of a separate felony (HRS § 134-21 (Supp. 2006)).  The first trial was conducted from July to August 2013.  At the settling of the jury instructions, the circuit court noted that both parties had asked that a manslaughter instruction not be given and indicated that, from what the court recalled, it "didn't think there was any evidence to support manslaughter anyway."  The circuit court thereafter instructed the jury only on the charged offenses.  The jury was deadlocked and unable to reach a verdict, and the circuit court found manifest necessity to declare a mistrial.

A second trial was conducted a year later.[1]  At the close of the evidence, the parties objected to submitting instructions on the included offenses of reckless manslaughter, assault in the first degree, and assault in the second degree on the grounds that there was no evidentiary basis to instruct on these offenses.  The circuit court overruled the parties' objection and concluded that there was a rational basis in the evidence to give jury instructions on reckless manslaughter and the assault offenses.  After six and a half days of deliberation, the jury acquitted Deedy of second-degree murder. The jury was deadlocked on all of the included offenses.  The circuit court thereafter entered a not guilty verdict on the second-degree murder count and concluded that Deedy could be retried on the included offenses on which the second jury was hung.

On November 26, 2014, Deedy filed a motion to dismiss the case under the United States Constitution, a motion to dismiss under State v. Moriwake, 65 Haw. 47, 647 P.2d 705 (1982), a motion to dismiss under the Hawai'i Constitution, and a motion to dismiss under HRS §§ 701-109 to 701-111.  The State opposed Deedy's dismissal motions.  After Deedy filed an omnibus

_____

[1]     The Honorable Karen S.S. Ahn presided over both trials.

reply, the circuit court conducted a hearing on the motions. At the conclusion of the hearing, the circuit court orally ruled against Deedy on his motion to dismiss brought pursuant to Moriwake and later issued a written order denying the motion that set forth findings of facts and conclusions of law. The circuit court, by minute order, also denied Deedy's other dismissal motions and later issued written orders denying these motions.

The circuit court approved Deedy's request to file an interlocutory appeal of the court's denial of Deedy's dismissal motions. Deedy timely filed a notice of appeal, and the appeal was transferred to this court.

## II. ARGUMENTS ON APPEAL

Deedy contends that a third trial in his case is barred based on multiple grounds: (1) principles of double jeopardy under the state and federal constitutions; (2) statutory provisions under the Hawaii Penal Code that preclude further prosecution; (3) the circuit court's abuse of its discretion in failing to exercise its inherent authority to dismiss the case with prejudice; and (4) his immunity from State prosecution under the Supremacy Clause of the federal constitution. Deedy urges this court to vacate the circuit court's orders, hold one or more of his constitutional or other claims meritorious, and remand this case for entry of dismissal

with prejudice.  The State counters that Deedy's arguments are without merit and also contends that Deedy has waived his claims by raising them in an untimely manner.

### III.  STANDARDS OF REVIEW

#### A. Double Jeopardy

Whether double jeopardy principles require the dismissal of a criminal charge is "a question of constitutional law that we review under the right/wrong standard of review." State v. Deguair, 136 Hawai'i 71, 85, 358 P.3d 43, 57 (2015) (quoting State v. Toyomura, 80 Hawai'i 8, 15, 904 P.2d 893, 900 (1995)).

#### B. Statutory Construction

Statutory construction "presents questions of law that are reviewed de novo under the right/wrong standard."  State v. King, 139 Hawai'i 249, 253, 386 P.3d 886, 890 (2016) (quoting State v. Lei, 95 Hawai'i 278, 281, 21 P.3d 880, 883 (2001)).

#### C. **Moriwake** Analysis

A trial court's application of State v. Moriwake to a motion to dismiss an indictment is reviewed for an abuse of discretion.  See State v. Hinton, 120 Hawai'i 265, 278—80, 204 P.3d 484, 498—99 (2009).

> The trial court abuses its discretion when it clearly
> exceeds the bounds of reason or disregards rules or
> principles of law or practice to the substantial detriment
> of a party litigant.  The burden of establishing abuse of

> discretion is on appellant, and a strong showing is
> required to establish it.

State v. Deguair, 136 Hawai'i 71, 84–85, 358 P.3d 43, 56–57 (2015) (quoting Hinton, 120 Hawai'i at 273, 204 P.3d at 492).

### D. Supremacy Clause Immunity

"Supremacy Clause immunity dismissals present a mixed question of law and fact and are reviewed de novo." Wyoming v. Livingston, 443 F.3d 1211, 1226 (10th Cir. 2006).

### IV. DISCUSSION

### A. Waiver and Forfeiture

As a preliminary matter, the State asserts that Deedy has waived or forfeited claims based upon his double jeopardy and federal immunity motions because the motions were filed well after the conclusion of the second trial. As support for its position, the State relies upon Hawai'i Rules of Penal Procedure (HRPP) Rule 12 (2015), which provides, inter alia, that motions regarding "defenses and objections based on defects in the institution of the prosecution" must be raised prior to trial and "within 21 days after arraignment unless the court otherwise directs." HRPP Rule 12(b)(1), (c) (emphasis added).[2] Failure by

---

[2] HRPP Rule 12 provides, in relevant part:

> (b) Pretrial motions. Any defense, objection, or
> request which is capable of determination without the trial
> of the general issue may be raised before trial by motion.

(continued . . .)

a party to file pretrial motions in compliance with subsections (b) and (c) of HRPP Rule 12 "shall constitute waiver thereof," subject to the court's authority to "grant relief from the waiver." HRPP Rule 12(f).

HRPP Rule 12(b)(1), however, does not apply in this case because the second retrial was not an "institution of [a] prosecution." "A prosecution is commenced either when an indictment is found or a complaint filed, or when an arrest warrant or other process is issued, provided that such warrant or process is executed without unreasonable delay." HRS § 701-108(5) (1993 & Supp. 2006). Thus, a retrial is a continuation of a prosecution that was already instituted, State v. Mundon, 129 Hawai'i 1, 14 n.22, 292 P.3d 205, 219 n.22 (2012) (citing United States v. Bailin, 977 F.2d 270, 276 (7th Cir. 1992)), and HRPP Rule 12(b)(1) is accordingly not applicable to a retrial.

---

(. . . continued)

> Motions may be written or oral at the discretion of the judge. The following must be raised prior to trial:
> (1) defenses and objections based on defects in the institution of the prosecution;
> . . . .
> (c) Motion date. Pretrial motions and requests must be made within 21 days after arraignment unless the court otherwise directs.
> . . . .
> (f) Effect of failure to raise defenses or objections. Failure by a party to raise defenses or objections or to make requests which must be made prior to trial, within the time set by the court pursuant to section (c), or within any extension thereof made by the court, shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver.

Further underscoring the rule's inapplicability is its requirement that "[p]retrial motions and requests must be made within 21 days after arraignment unless the court otherwise directs."  HRPP Rule 12(c).  Arraignment takes place at the commencement of a prosecution, and no new arraignment is had after a mistrial and before a retrial.  See HRPP Rule 5(b) (2008); HRPP Rule 10 (2008).  It would therefore not be possible to comply with the HRPP Rule 12(b)(1) deadline for pretrial motions if its requirements were imposed on motions concerning issues relating to a retrial.  Accordingly, HRPP Rule 12(b)(1) does not apply to motions filed with respect to a retrial, and we therefore consider the merits of all the contentions that Deedy has asserted in his appeal.

## B. Double Jeopardy Principles Under the State and Federal Constitutions

Deedy contends that a third trial is barred by the double jeopardy clauses of article I, section 10 of the Hawai'i Constitution and the Fifth Amendment to the U.S. Constitution.[3] The double jeopardy clause of the State and federal constitutions "forbid[] a second trial for the purpose of affording the prosecution another opportunity to supply evidence

_____

[3]     Deedy's arguments in support of his state constitutional double jeopardy claims parallel those he makes in support of his federal double jeopardy claims, and accordingly, they are discussed together.

which it failed to muster in the first proceeding." State v. Quitog, 85 Hawai'i 128, 140, 938 P.2d 559, 571 (1997) (quoting Burks v. United States, 437 U.S. 1, 11 (1978)). "Double jeopardy protects individuals against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense." Id. at 141, 938 P.2d at 572 (quoting State v. Ontiveros, 82 Hawai'i 446, 450, 923 P.2d 388, 392 (1996)).

Deedy raises three arguments to support his constitutional double jeopardy claims: (1) the State abandoned reckless manslaughter and the assault offenses by its trial strategy; (2) the circuit court's ruling in the first trial with respect to the submission of jury instructions on the included offenses constituted an acquittal of the reckless manslaughter and the assault offenses; and (3) even assuming that double jeopardy has not attached, the doctrine of collateral estoppel precludes a third trial.

## 1. Quitog Abandonment of Reckless Manslaughter and the Assault Offenses

Deedy contends that the State abandoned the reckless manslaughter and assault offenses and is thus barred from retrying him for these offenses under the principles enunciated in State v. Quitog, 85 Hawai'i 128, 938 P.2d 559 (1997).

In Quitog, this court held that the double jeopardy clause of the Hawai'i Constitution "bar[s] a retrial of the defendant as to the originally charged offense" if the following prerequisites are satisfied:

> during final argument in a criminal prosecution for [the originally charged offense], (1) the prosecution abandons its initial position that the defendant is guilty as charged by (a) expressly conceding that he is not and (b) exhorting the jury to convict the defendant of one of several included offense as to which the trial court has instructed the jury, (2) the jury deadlocks by virtue of its inability to reach a unanimous agreement regarding the particular offense, if any, of which the defendant has been proved guilty, (3) the trial court declares a mistrial based upon "manifest necessity," and (4) the prosecution could have presented the jury with the theory that it subsequently wishes to advance on retrial.

Quitog, 85 Hawai'i at 129-30, 938 P.2d at 560-61. Said another way, "the Hawai'i Constitution 'bars retrial for [a] charge when the government's deliberate trial strategy'--which is completely incompatible with another approach that it could have pursued, but expressly chose not to--accompanies the termination of 'the first trial . . . without the jury passing upon that charge.'" Id. (quoting United States v. Cavanaugh, 948 F.2d 405, 417 (8th Cir. 1991)). This test was derived from federal courts of appeals cases, as noted in this court's opinion in Quitog. Id. at 148—49, 938 P.2d at 579—80 (citing Cavanaugh, 948 F.2d at 413 (concluding that the government at trial abandoned the theory that there were two separate criminal acts--assault and murder-- because the government presented the acts that allegedly

constituted assault as an integral part of the actual murder); Sizemore v. Fletcher, 921 F.2d 667, 673 (6th Cir. 1990) (ruling that a second trial may be "barred by double jeopardy" if "the first trial ended without a verdict for reasons of the prosecution's making"); Saylor v. Cornelius, 845 F.2d 1401, 1403, 1408 (6th Cir. 1988)).

Deedy maintains that all of the Quitog requirements were met in this case: the State abandoned the initial position it took in the indictment, which allowed for conviction of the included offenses, by (1) conceding that the evidence it adduced did not support finding him guilty of any included offense and by so exhorting the second jury; (2) the second jury deadlocked on the included offenses; (3) the circuit court tacitly found manifest necessity and declared a mistrial; and (4) the State could have presented the second jury with the theories underlying the included offenses.

The circumstances of Quitog are markedly different from this case. At the outset, Quitog applies in situations where the State "abandons its initial position that the defendant is guilty as charged." Quitog, 85 Hawai'i at 129, 938 P.2d at 560 (emphasis added). Deedy is essentially attempting to apply Quitog in reverse: that is, the State ostensibly abandons the position that the defendant could also be guilty of the included offenses by focusing on the charged offense and by

11

imploring the factfinder to find the defendant guilty as charged. Based on the clear language of Quitog, this sort of reverse application was never contemplated; accordingly, in cases where the State focuses on the charged offense, the concept of abandonment adopted by this court in Quitog does not apply, and the State is not precluded from proceeding with a retrial of the defendant on the included offenses of the charged offense. See Quitog, 85 Hawai'i at 129, 938 P.2d at 560.

Further, even assuming that the Quitog framework applies, the facts of this case do not demonstrate abandonment of reckless manslaughter and the assault offenses. The defendant in Quitog was charged with attempted murder in the second degree; however, during the State's closing argument at trial, the deputy prosecutor stated, in pertinent part, the following:

> [BY THE DPA]: . . .
>
> What I am about to tell you will probably surprise many, if not all of you.
>
> [Quitog] is charged with Attempted Murder in the Second Degree, among other things. He is not guilty of Attempted Murder in the Second Degree. . . . .
>
> Now, as I argued to you at the outset, [Quitog] is not guilty of Attempted Murder because there was no intent to kill. I'll admit that. The [prosecution] does not seek a conviction of Attempted Murder in the Second Degree. Well, let me tell you something else. He's also not guilty of Attempted Manslaughter because Attempted Manslaughter requires reckless conduct.
>
>     . . .

12

> He's guilty of Assault in the First Degree. He's guilty of intentionally or knowingly causing serious bodily injury. . . . [D]on't convict him either of Assault in the Second Degree or Assault in the Third Degree because he did much more than that; . . . the injuries he created and what was on his mind, his state of mind, was more than recklessly; was more than substantial bodily injury; and was more than bodily injury. That's why the [prosecution] asks you to convict him of Assault in the First Degree.

Quitog, 85 Hawai'i at 132-33, 938 P.2d at 563-64 (footnote omitted).

This court determined, based on the deputy prosecutor's final argument, that the State abandoned the charged offense of attempted murder in the second degree. Id. at 149, 938 P.2d at 580. We reached this conclusion because the State could have presented this theory to the original jury but chose not to and because the trial terminated without a determination of guilt or innocence on the charged offense following "a deliberate, tactical decision by the prosecution." Id. (quoting Cavanaugh, 948 F.2d at 416).

In contrast, the deputy prosecutor at the second trial did not exhort the jury to acquit Deedy of reckless manslaughter and the assault offenses. During the second trial, the State explicitly discussed the possibility that the jury could convict Deedy of an included offense if the jury found it appropriate to do so:

> You have also heard from the Court that there are other counts you may consider if you feel it is necessary at a certain point in your deliberations. They

are Reckless Manslaughter and Manslaughter as a Result of Extreme Mental or Emotional Disturbance.

The state of mind for the Reckless Manslaughter is self-explanatory. It's reckless. And you have heard the definition of what reckless conduct is. It's reckless as opposed to intentional and knowing, which is what Murder Second requires.

The second manslaughter option relates to a situation in which the defendant intentionally causes the death of [the deceased], but he does so while under extreme emotional distress. This type of manslaughter is a defense that the defendant must prove to you. That is his burden in this case for that defense.

. . . Other charges that the Court has given you to consider -- at a certain point in your deliberation, if you feel that you need to, include Assault in the First Degree, and Assault in the Second Degree. Now, like the difference between Murder 2 and Reckless Manslaughter, the Assault charges incorporate the intentional and reckless states of mind. Assault 1 would be intentional, Assault 2, reckless. The difference between the Murder/Manslaughter charges and the Assault 1, Assault 2 charges is what happens, the consequence of the action.

. . .

I urge you to carefully consider all of the instructions as given. In doing so, you will find that there is only one charge which is supported by the credible evidence in this case, and that is the original charge of Murder in the Second Degree.

Additionally, the jury acquitted Deedy of the charged offense in this case unlike in Quitog, where the jury deadlocked on the charged offense. Quitog, 85 Hawai'i at 145-46, 938 P.2d at 576-77. Thus, the resolution of this case also does not meet Quitog's second requirement that the factfinder deadlocks with respect to the charged offense. Id. at 129, 938 P.2d at 560. Relatedly, the third Quitog requirement is also not satisfied in

14

this case because, unlike in Quitog, where the mistrial was declared with respect to the charged offense, the declaration of a mistrial in this case was made only with respect to reckless manslaughter and the assault offenses; Deedy was acquitted of the charged offense of second-degree murder. Id. at 135, 938 P.2d at 566. Finally, the fourth Quitog requirement is not met because, unlike in Quitog, the State in this case did not "expressly conced[e]" that Deedy was not guilty of reckless manslaughter and the assault offenses and, in fact, "presented the [second] jury with the theory that it subsequently wishes to advance on retrial." Id. at 129-30, 938 P.2d at 560-61; cf. Cavanaugh, 948 F.2d at 413, 417.

Based on the foregoing, it cannot be said that the State abandoned reckless manslaughter and the assault offenses. The State's trial strategy of primarily arguing that the evidence supports a conviction on second-degree murder does not demonstrate, contrary to Deedy's contention, that the State abandoned reckless manslaughter and the assault offenses. Urging the jury to convict on the original charge is not the type of statements or acts that the Quitog court determined as constituting abandonment: the State in this case did not go "out on a limb" to take reckless manslaughter and the assault offenses "off the table." Quitog, 85 Hawai'i at 146, 938 P.2d at 577. Thus, Quitog and its federal counterparts do not bar a

15

retrial on reckless manslaughter and the included assault offenses.

## 2. Acquittal

Deedy next contends that, under the double jeopardy clause of the state and federal constitutions, he may not be retried for reckless manslaughter and the included assault offenses because the circuit court's ruling at the first trial-- that there was no rational basis in the evidence to support a reckless manslaughter jury instruction--constituted an acquittal for purposes of double jeopardy.[4]

Deedy reasons that the circuit court's finding that there was no rational basis to support a reckless manslaughter charge necessarily implies that the State would not have been able to overcome a judgment of acquittal, which is governed by a higher standard than "rational basis." Deedy argues that this court should find the circuit court's refusal to issue a reckless manslaughter jury instruction as sufficient to bar a retrial on that charge. According to Deedy, the circuit court's independent conclusion in the first trial that the evidence did

---

[4] Deedy similarly contends that the State is precluded from retrying the firearm offense, which is dependent on Deedy's commission of a separate felony. Correlatively, in each instance where Deedy argues that he had already been acquitted of reckless manslaughter and the assault offenses- -e.g., collateral estoppel, discussed infra--his respective argument is that he may not be retried on the firearm offense as well.

not rationally support a reckless manslaughter instruction establishes his lack of criminal culpability for that offense and satisfies the U.S. Supreme Court's definition of an "acquittal" in Evans v. Michigan, 568 U.S. 313 (2013).[5]

It is beyond dispute that "[t]he constitutional guarantee against double jeopardy 'protects against a second prosecution for the same offense after acquittal.'" State v. Lee, 91 Hawai'i 206, 209, 982 P.2d 340, 343 (1999) (footnote omitted) (quoting North Carolina v. Pearce, 395 U.S. 711, 717 (1969)). This court has adopted the Supreme Court's test in determining whether a defendant is deemed acquitted: "A defendant is acquitted only when 'the ruling of the judge, whatever its label, actually represents a resolution [in defendant's favor], correct or not, of some or all of the factual elements of the offense charged.'" State v. Dow, 72 Haw. 56, 65, 806 P.2d 402, 407 (1991) (alteration in original) (quoting United States v. Martin Linen Supply Co., 430 U.S. 564, 571 (1991)).

---

[5] Deedy quotes Evans's definition of an "acquittal": "An 'acquittal' includes a ruling by the court that the evidence is insufficient to convict, a factual finding that necessarily establishes the criminal defendant's lack of criminal culpability, and any other ruling which relates to the ultimate question of guilt or innocence." (Quoting Evans, 568 U.S. at 319.) The State responds that Evans is distinguishable because the trial court in that case expressly ruled in favor of the defendant's motion for a judgment of acquittal based upon the court's conclusion that the State failed to provide sufficient evidence to establish a particular element of the offense.

17

As an initial matter, the "acquittal" rule does not apply to lesser included offenses where the greater charge has not been resolved by the factfinder, as was the case in Deedy's first trial. Cases decided by this court and the Supreme Court did not involve the situation postulated by Deedy--where the defendant is deemed to have been acquitted of included offenses for double jeopardy purposes even though resolution of a greater charge is pending. See State v. Poohina, 97 Hawai'i 505, 510, 40 P.3d 907, 912 (2002); Dow, 72 Haw. at 65, 806 P.2d at 407; Evans, 568 U.S. at 315-16; Martin Linen Supply Co., 430 U.S. at 571-72.

HRPP Rule 29(a) also sheds light on the faulty nature of Deedy's argument. The rule states in relevant part as follows:

> The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses alleged in the charge after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

HRPP Rule 29(a) (1977). This rule provides no authority for a trial court to acquit a defendant of an included offense without first acquitting the defendant of the greater charge then pending before the factfinder. That is, HRPP Rule 29(a) would not have allowed the circuit court in this case to acquit Deedy of the included offenses of reckless manslaughter, assault in the first degree, and assault in the second degree without first

18

acquitting him of second-degree murder. In fact, HRPP Rule 29(a) operates in reverse. When a court grants a motion for a judgment of acquittal, the court must consider whether the evidence would be sufficient to sustain a conviction of an included offense. 2A Charles Alan Wright, Peter J. Henning, & Sarah N. Welling, Federal Practice and Procedure § 467 (4th ed.); United States v. Hawpetoss, 388 F. Supp. 2d 952, 957 (E.D. Wis. 2005) ("[B]ecause a defendant may be found guilty of a lesser offense necessarily included in the offense charged in the indictment, a court confronted with a Rule 29 motion at the close of the evidence must also consider whether the evidence would be sufficient to sustain a conviction of such a lesser offense.").[6] Consequently, contrary to Deedy's contention, a court lacks authority to grant a judgment of acquittal of included offenses before granting an acquittal of the greater offense, and indisputably, the circuit court did not grant an acquittal of the greater offense in the first trial in this case.

---

[6]     Federal Rules of Criminal Procedure (Fed. R. Crim. P.) Rule 29 is substantially similar to HRPP Rule 29, and interpretation by the federal courts of Fed. R. Crim. P. Rule 29 may be used to guide this court's own interpretation of HRPP Rule 29. See State v. Crisostomo, 94 Hawai'i 282, 287–88, 12 P.3d 873, 878–79 (2000) ("Because HRPP Rule 24(c) is nearly identical to its federal counterpart, i.e., Federal Rules of Criminal Procedure (FRCrP) Rule 24(c) (1999), this court may look to parallel federal law for guidance." (footnote omitted)).

In addition, a trial court's decision resolving the issue of whether to give or withhold certain jury instructions is not a "resolution . . . of some or all of the factual elements of the offense charged" and, thus, does not constitute an acquittal.  Dow, 72 Haw. at 65, 806 P.2d at 407 (alteration in original) (quoting Martin Linen Supply Co., 430 U.S. at 571).  As this court has previously explained, whether a trial court must give a particular jury instruction is "a question of law based on an objective juror standard."  State v. Taylor, 130 Hawai'i 196, 207, 307 P.3d 1142, 1153 (2013).  In State v. Maelega, the court explained that the determination of whether to instruct the jury on the defense of extreme mental or emotional disturbance (EMED) called for the court's "legal conclusion" that the defendant "had met his burden of production by coming forward with evidence at trial to support his defense of EMED manslaughter."  80 Hawai'i 172, 177 n.8, 907 P.2d 758, 763 n.8 (1995); see also id. at 179 n.10, 907 P.2d at 765 n.10 (emphasizing that whether a particular instruction should be given to the jury is a legal "question that should be decided by the trial court as a matter of law").

This means that the circuit court's conclusion in this case that the jury should not be instructed on included offenses was a determination of a legal question--i.e., whether there was

a rational basis to instruct the jury on included offenses--and not a resolution of any of the factual elements determinative of a person's guilt of the included offenses.  See Taylor, 130 Hawai'i at 207, 307 P.3d at 1153; Maelega, 80 Hawai'i at 177 n.8, 179 n.10, 907 P.2d at 763 n.8, 765 n.10.  Thus, the court's decision not to instruct the jury on included offenses is not an acquittal for the purposes of double jeopardy.  Cf. Dow, 72 Haw. at 65, 806 P.2d at 407 (stating that a ruling is an acquittal under double jeopardy principles if it resolves some or all of the factual elements of the charged offense).

Deedy's argument is also unavailing when the procedure underlying whether to give instructions on lesser included offenses is examined.  The United States Supreme Court and several other jurisdictions have characterized the test governing the issuance of jury instructions on lesser included offenses as a "procedural safeguard" that is "especially important" in cases where the failure to instruct "on a lesser included offense would seem inevitably to enhance the risk of an unwarranted conviction."  Beck v. Alabama, 447 U.S. 625, 637 (1980); accord State v. Morales, 673 N.W.2d 250, 254–55 (N.D. 2004); State v. Tweed, 491 N.W.2d 412, 416 (N.D. 1992); State v. Powell, 154 P.3d 788, 796–97 (Utah 2007); State v. Dahlin, 695 N.W.2d 588, 597 (Minn. 2005); State v. Andrade, 954 P.2d 755, 758 (N.M. Ct. App. 1997).  The Commentary on the Model Penal

Code (MPC) has also described the test as "procedural in nature." Model Penal Code and Commentaries § 1.07, cmt. 5 at 129 & n.106 (Official Draft and Revised Comments 1985) [hereinafter MPC Commentaries]. Accordingly, a trial court's ruling on whether to issue jury instructions on lesser included offenses does not constitute an acquittal for double jeopardy purposes. See Evans, 568 U.S. at 319-20 (explaining that procedural rulings that result in dismissals are not acquittals that implicate double jeopardy concerns).

Finally, the manner in which Deedy urges this court to apply the "acquittal" rule and the practical effects of such an application are at odds with this court's precedents governing the ramifications of the trial court's failure to give jury instructions on lesser included offenses when certain prerequisites have been satisfied. It is well established that "trial courts shall instruct juries as to any included offenses having a rational basis in the evidence without regard to whether the prosecution requests, or the defense objects to, such an instruction." State v. Adviento, 132 Hawai'i 123, 140, 319 P.3d 1131, 1148 (2014) (quoting State v. Haanio, 94 Hawai'i 405, 407, 16 P.3d 246, 248 (2001), overruled in part on other grounds by State v. Flores, 131 Hawai'i 43, 314 P.3d 120 (2013)). Failure to do so will result in the vacatur of the trial court's

judgment and a remand for a new trial. Id. at 152, 319 P.3d at 1160 (remanding the case for a new trial because of the circuit court's failure to instruct the jury on extreme mental or emotional disturbance).

Under Deedy's approach, whenever a trial court determines that jury instructions on lesser included offenses are not required and an appellate court disagrees, the appellate court could not remand the case for a retrial because doing so would offend double jeopardy principles. Yet precedents from this court have expressly provided for this result. Flores, 131 Hawai'i at 58, 314 P.3d at 135 (remanding for a retrial because the court failed to instruct the jury on an included offense); Adviento, 132 Hawai'i at 152, 319 P.3d at 1160; State v. Faamama, 139 Hawai'i 94, 101, 384 P.3d 870, 877 (2016) (holding that the circuit court's failure to give instructions on the included offense of theft in the second degree required remand for a retrial).[7] Therefore, Deedy was not acquitted of reckless manslaughter and the assault offenses within the meaning of "acquittal" under both the Hawai'i and federal constitutions.

---

[7] Further, if a trial court's determination to not submit jury instructions on lesser included offenses were deemed an acquittal of the included offenses, then the legal consequence would also be an acquittal of the greater offense when the lesser included offense "is established by proof of the same or less than all the facts required to establish the commission of the offense charged." See HRS § 701-109(4)(a) (2014).

23

### 3. Collateral Estoppel

Deedy argues that, even assuming that double jeopardy has not attached, the doctrine of collateral estoppel stemming from the double jeopardy clauses of the State and federal constitutions precludes the State from trying him a third time. Deedy maintains that the State is collaterally estopped from retrying him on reckless manslaughter and the included assault offenses because the circuit court, at the first trial, had already acquitted him of these charges. According to Deedy, he was acquitted when the circuit court ruled that there was no evidence to support a reckless manslaughter instruction because the evidence does not factually support a finding of recklessness. Thus, Deedy concludes that the issue of whether he had a reckless state of mind when he fired the lethal shot may not be relitigated at a third trial. The State responds that, during the settling of jury instructions at the first trial, the circuit court "neither considered the application of the reckless state of mind to each element of reckless manslaughter nor made any such findings."

The doctrine of "collateral estoppel means that 'when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" State v. Mundon, 129 Hawaiʻi 1, 14, 292 P.3d 205, 218 (2012) (quoting Ashe v. Swenson,

397 U.S. 436, 443 (1970)). Collateral estoppel "is a principle embodied in the right against double jeopardy, and precludes relitigation of issues already decided, even when double jeopardy is not necessarily implicated." Id. (citing Ashe, 397 U.S. at 443).

In Ashe--the case from which this court adopted the collateral estoppel principle--the defendant, who allegedly robbed individuals engaged in a poker game, was acquitted by a jury of the charged offense with respect to one of the victims and was then found guilty of the same offense with respect to another victim. Ashe, 397 U.S. at 438—39. The Supreme Court concluded that,

> [o]nce a jury had determined upon conflicting testimony
> that there was at least a reasonable doubt that the
> petitioner was one of the robbers, the State could not
> present the same or different identification evidence in a
> second prosecution for the robbery of [a different victim]
> in the hope that a different jury might find that evidence
> more convincing.

Id. at 446.

In this case, there was no determination that Deedy was not guilty of reckless manslaughter or the assault offenses because the circuit court's determination at the first trial that jury instructions on the included offenses were not to be given was not tantamount to an acquittal, see supra, and because, at the second trial, the jury was deadlocked on these included offenses. Accordingly, the State is not collaterally

estopped under the Hawai'i or federal constitution from retrying

Deedy on these offenses.[8]

## C. Statutory Provisions Affecting Further Prosecution

In addition to his state and federal double jeopardy

claims, Deedy contends that pursuant to HRS §§ 701-109(2)

(1993), 701-110(1) (1993), and 701-111(1)(a) and (1)(c) (1993),

he may not be retried for reckless manslaughter and the included

assault offenses.

### 1. HRS § 701-109(2)

Deedy asserts that HRS § 701-109(2) bars a third trial

on reckless manslaughter and the included assault offenses.  HRS

§ 701-109(2) provides as follows:

---

[8]     The dissent, sua sponte, relies on plain error to argue that the
State is barred from retrying Deedy by <u>judicial</u> estoppel rather than
<u>collateral</u> estoppel as Deedy maintains.  Dissent at 4-8.  No party has raised
this argument at any stage of the proceeding, and it is incorrect in any
event.  The dissent contends that the State may not now argue that Deedy is
guilty of reckless manslaughter because this stance is inconsistent with the
State's position at both trials.  The dissent maintains that the State's
position that a reckless manslaughter instruction was not required
necessarily implied that there was no rational basis in the evidence for
finding Deedy guilty of reckless manslaughter.  Dissent at 5 (citing <u>Flores</u>,
131 Hawai'i at 51, 314 P.3d at 128).

However, it is not the State that determines whether there is a
rational basis in the evidence for an included instruction.  <u>Adviento</u>, 132
Hawai'i at 140, 319 P.3d at 1149.  The State's position regarding the
submission of an included offense instruction to the jury is irrelevant to
whether Deedy can be retried.  And, it was similarly irrelevant to the
State's ability to discuss in closing argument the applicability of the
<u>court's</u> included instructions (as the State did in the second trial).
Unequivocally, the State's assessment of the evidence as it pertained to the
submission of included offense jury instructions at an earlier trial does not
estop the State from retrying the defendant on an included offense on which
the jury deadlocked.

> (2) Except as provided in subsection (3) of this section, <u>a defendant shall not be subject to separate trials for multiple offenses based on the same conduct or arising from the same episode</u>, if such offenses are known to the appropriate prosecuting officer at the time of the commencement of the first trial and are within the jurisdiction of a single court.

HRS § 701-109(2) (emphasis added).

HRS § 701-109(2) has previously been labeled by this court as the "compulsory joinder" law, in that it "acts as a procedural limitation upon the State's power under HRS § 701-109(1) to seek convictions for all offenses resulting from a single course of conduct." State v. Aiu, 59 Haw. 92, 95-96, 576 P.2d 1044, 1047 (1978). The Commentary on HRS § 701-109 states that "[s]ubsection (2) requires joinder of the trials of two or more offenses based on the same conduct." HRS § 701-109 cmt.; accord State v. Carroll, 63 Haw. 345, 351, 627 P.2d 776, 780 (1981).[9] "Section 701-109(2) reflects a policy that all charges that arise under one episode be consolidated in one trial so that a defendant need not face the expense and uncertainties of multiple trials based on essentially the same episode." State v. Servantes, 72 Haw. 35, 38, 804 P.2d 1347, 1348 (1991). The Servantes court noted that the joinder requirement of HRS § 701-

---

[9] HRS § 701-109(2) was patterned after MPC § 1.07(2), and the commentary on MPC § 1.07(2) is in accord with this court's interpretation of the requirements of HRS § 701-109(2): "It requires the prosecution to join in one trial all offenses based on the same conduct or arising from the same criminal episode." MPC Commentaries § 1.07, cmt. 3 at 116.

27

109(2) "is designed to prevent the State from harassing a defendant with successive prosecutions where the State is dissatisfied with the punishment previously ordered or where the State has failed to convict the defendant." Id.

HRS § 701-109(2) simply has no application in this case because all offenses with which Deedy was charged were tried together at the first and second trials. Instead, HRS § 701-109(2) applies where there are charges arising from the same conduct or the same episode and the State attempts to try those charges separately. See, e.g., Carroll, 63 Haw. at 346–53, 627 P.2d at 777 (stating that the defendant was charged in the circuit court with attempted criminal property damage in the second degree and was previously acquitted in an earlier district court trial of possession of an obnoxious substance, but holding that the separate charges were based on distinct courses of conduct). In this case, Deedy was not being charged separately for the same course of conduct; there is but one criminal action filed in the circuit court. As discussed supra, a retrial on reckless manslaughter and the included assault offenses is merely a "continuation" of the same prosecution following the declaration of a mistrial when the jury was deadlocked as to those offenses. See State v. Mundon, 129 Hawai'i 1, 14 n.22, 292 P.3d 205, 219 n.22 (2012) (quoting United States v. Bailin, 977 F.2d 270, 276 (7th Cir. 1992)).

28

## 2. HRS § 701-110(1)

Deedy further argues that a third trial on reckless manslaughter and the included assault offenses is barred by HRS § 701-110(1), which provides as follows:

> When a prosecution is for an offense under the same statutory provision and is based on the same facts as a former prosecution, it is barred by the former prosecution under any of the following circumstances:
>
> (1) The former prosecution resulted in an acquittal which has not subsequently been set aside. There is an acquittal if the prosecution resulted in a finding of not guilty by the trier of fact or in a determination by the court that there was insufficient evidence to warrant a conviction. A finding of guilty of a lesser included offense is an acquittal of the greater inclusive offense, although the conviction is subsequently set aside on appeal by the defendant.

HRS § 701-110(1) (emphasis added).

In pertinent part, the Commentary on HRS § 701-110 states that this statute "bars a new prosecution for an offense under the same statutory provision and based upon the same facts as a former prosecution when there is an acquittal." HRS § 701-110 cmt. The statute has been previously applied by this court in cases involving a conviction of a lesser included offense that barred a retrial on the greater offense, since the conviction of the lesser included offense is an acquittal of the greater offense. For example, in State v. Feliciano, 62 Haw. 637, 618 P.2d 306 (1980), superseded by statute on other grounds as stated in State v. Kalaola, 124 Hawai'i 43, 52, 237 P.3d 1109,

29

1118 (2010), we held that a retrial on the originally charged greater offense was barred by HRS § 701-110(1) because "[t]he jury conviction in the first trial on the lesser included offense automatically acquitted the appellant of the greater charge in the indictment." Id. at 644, 618 P.2d at 311. Because of that automatic acquittal, HRS § 701-110(1) precluded a retrial on the greater charge.

In this case, the acquittal in the second trial was only as to the original charge of second-degree murder and not as to any of the included offenses. If the State were attempting to retry Deedy for the initially charged offense of murder in the second degree under the same statutory provision, then HRS § 701-110(1) would bar such an attempt. But, instead, the State seeks to retry Deedy on the included offenses of reckless manslaughter, assault in the first degree, and assault in the second degree--of which he was not acquitted--given that the second jury was hung as to these offenses. Further, contrary to Deedy's position, the circuit court's non-submission of jury instructions on these included offenses in the first trial did not constitute an acquittal. See supra. Accordingly, HRS § 701-110(1) does not bar a retrial on reckless manslaughter and the included assault offenses.

### 3. HRS § 701-111(1)(a) and (1)(c)

Deedy asserts that a third trial is also barred by HRS § 701-111(1)(a) and (1)(c), which states as follows:

> Although a prosecution is for a violation of a different statutory provision or is based on different facts, it is barred by a former prosecution under any of the following circumstances:
>
> (1) The former prosecution resulted in an acquittal which has not subsequently been set aside or in a conviction as defined in section 701-110(3) and the subsequent prosecution is for:
>
> (a) Any offense of which the defendant could have been convicted on the first prosecution
>
> . . .
>
> (c) An offense based on the same conduct. . . .

HRS § 701-111(1)(a), (c). At the outset, HRS § 701-111 has no application in this case because it "obviously was intended to deal with a new prosecution, commenced after a termination of a prior prosecution, and terminated as defined in that section." State v. Wacker, 70 Haw. 332, 333, 770 P.2d 420, 421–22 (1989), overruled on other grounds by State v. Dow, 72 Haw. 56, 806 P.2d 402 (1991) (emphasis added). This statute "was not intended to deal with a situation where there were multiple counts, under different statutes, in an original prosecution, which were tried together as required by statute, resulting in an acquittal on some of the counts, and a mistrial on others." Id.

In this case, a retrial on reckless manslaughter and the included assault offenses will not be a "new prosecution"

because, as discussed <u>supra</u>, it will merely be a "continuation" of the original prosecution. <u>State v. Mundon</u>, 129 Hawai'i 1, 14 n.22, 292 P.3d 205, 219 n.22 (2012) (quoting <u>United States v. Bailin</u>, 977 F.2d 270, 276 (7th Cir. 1992)); HRS § 701-108(5) (1993 & Supp. 2006).

In addition, even assuming that HRS § 701-111 applies in the context of a retrial, Deedy's argument--predicated on HRS § 701-111(1)(a)--would be without merit because this subsection does not apply where, as here, the factfinder acquits the defendant of the greater offense but is deadlocked as to the lesser included offenses of the greater offense. MPC Commentaries § 1.09 cmt. 2 at 157 n.5 (noting that MPC § 1.09(1)(a), which is identical to HRS § 701-111(1)(a), does not bar a retrial on lesser included offenses "where there is an acquittal of the greater offense and a mistrial is properly declared with respect to the lesser offense"); <u>People v. Jenkins</u>, 354 N.E.2d 139, 140 (Ill. App. Ct. 1976) (where the jury acquitted the defendant of the greater offense but failed to agree as to the included offenses, Illinois's statute that parallels HRS § 701-111(1)(a) does not bar a retrial on the included offenses). Accordingly, HRS § 701-111(1)(a) and (1)(c) does not bar a retrial on reckless manslaughter and the included assault offenses.

## D. **Moriwake** Claim

Deedy next argues that the circuit court erroneously denied his motion to dismiss, brought pursuant to this court's decision in State v. Moriwake, 65 Haw. 47, 647 P.2d 705 (1982), because the court misapplied and misapprehended the factors relevant to the determination of whether dismissal is appropriate.  In Moriwake, we held that trial courts, "[w]ithin the bounds of duly exercised discretion," may in appropriate circumstances "dismiss[] an indictment with prejudice following the declaration of one or more mistrials because of genuinely deadlocked juries, even though the defendant's constitutional rights are not yet implicated."  Id. at 55, 647 P.2d at 711.

In making a determination as to whether to dismiss an indictment, the role of a trial court is to balance "the interest of the state against fundamental fairness to a defendant with the added ingredient of the orderly functioning of the court system."  Id. at 56, 647 P.2d at 712 (quoting State v. Braunsdorf, 297 N.W.2d 808, 817 (1980) (Day, J., dissenting)).  The factors that the court should consider in undertaking this balance include the following:

> (1) the severity of the offense charged; (2) the number of prior mistrials and the circumstances of the jury deliberation therein, so far as is known; (3) the character of prior trials in terms of length, complexity and similarity of evidence presented; (4) the likelihood of any substantial difference in a subsequent trial, if allowed; (5) the trial court's own evaluation of relative case strength; and (6) the professional conduct and diligence of

> respective counsel, particularly that of the prosecuting
> attorney.

Id. at 56–57, 647 P.2d at 712–13.

"Nothing in Moriwake indicates that all factors must be given equal weight or that certain factors must be given more weight than others." State v. Hinton, 120 Hawai'i 265, 280, 204 P.3d 484, 499 (2009). In reviewing the propriety of a trial court's exercise of its discretion to dismiss an indictment, this court "accord[s] deference to the conclusion of the trial court." Moriwake, 65 Haw. at 56, 647 P.2d at 712. We will not vacate a trial court's Moriwake ruling unless the party challenging the ruling can make a strong showing that the court abused its discretion by clearly exceeding the bounds of reason or disregarding rules or principles of law or practice. State v. Deguair, 136 Hawai'i 41, 84–85, 358 P.3d 43, 56–57 (2015); Hinton, 120 Hawai'i at 273, 204 P.3d at 492.

### 1. Severity of the Offense

The circuit court concluded that the first factor favors retrial because manslaughter is "unquestionably a serious charge based upon an accused allegedly recklessly causing . . . the death of another person." Deedy argues that this factor weighs against retrial for the following reasons: even though reckless manslaughter may be viewed as a serious offense because it involves the death of a person, third-degree negligent

homicide (which also involves causing a death of another person) is only a misdemeanor; he had been acquitted of second-degree murder; and the State abandoned reckless manslaughter. However, reckless manslaughter is designated by the legislature as a class A felony, see HRS § 707-702(3) (1993 & Supp. 2006), it may subject a convicted defendant to an indeterminate term of twenty years of imprisonment, see HRS § 706-659 (2014), its commission results in the death of another human being, and, "when considered in light of, or as compared with, other felony offenses (such as murder, rape, or kidnapping)," reckless manslaughter is an offense of serious gravity. See Hinton, 120 Hawai'i at 278, 204 P.3d at 497 (intimating that murder, rape, and kidnapping are serious offenses and considering the felony classification of the charged offense in evaluating the first Moriwake factor). Further, as discussed supra, the State did not "abandon" reckless manslaughter in this case, contrary to Deedy's contention. Accordingly, the circuit court did not abuse its discretion in concluding that reckless manslaughter is a serious offense and that the first Moriwake factor weighs in favor of a retrial.[10]

---

[10] Deedy does not claim that the seriousness of the felony firearm charge favors dismissal, so this court need not reach this issue.

## 2. The number of prior mistrials and the circumstances of the jury deliberation therein, so far as is known

In analyzing this factor, the circuit court specifically referenced the jury communications from the second jury and noted that the jury appeared concerned about the recklessness state of mind and the timing of its applicability. The court also stated that "[i]t is difficult to discern from communications precisely how jury deliberations proceeded." Thus, the circuit court concluded that, "considering the legal and factual complexity of this case and the fact that a retrial will focus solely upon a reckless state of mind, this factor is neutral."

Deedy disagrees with the circuit court, arguing that the first jury voted eight to four in favor of acquittal on the murder charge and the second jury voted seven to five in favor of acquittal on the reckless manslaughter charge. Deedy also contends that the lengthy deliberation of the first and second juries weighs in favor of dismissal. The State responds that the juries in the first and second trials acquitted Deedy only of second-degree murder and that the contents of the jury communications to the court indicated that the jurors did not acquit Deedy of any of the lesser included offenses.

Although there have been two trials in this case, only the second trial involved submission to the jury of the included

reckless manslaughter and assault offenses.[11]  And even in cases where there had been two trials, both of which ended in a mistrial as to certain counts, this court has held that it was not an abuse of discretion for the circuit court to conclude that the second Moriwake factor weighed slightly for the allowance of a retrial.  Deguair, 135 Hawai'i at 88, 358 P.3d at 60.

Further, as the circuit court appears to have inferred, the jury communications from the second jury evince a degree of confusion about the recklessness state of mind and its application.  The third communication from the jury inquired, "Is recklessness limited to only at the time of using deadly force or includes from beginning to end leading up to the point of using deadly force?"  The fourth jury communication mirrored the inquiry contained in the third jury communication.  The

---

[11]  The dissent argues that the number of times the jury was instructed on reckless manslaughter and assault offenses should be irrelevant to our analysis because it does not change the number of chances the State has been afforded to obtain a guilty verdict.  Dissent at 11-12.  However, the second factor provides for consideration of "the number of prior mistrials and the circumstances of the jury deliberation therein, so far as is known."  Moriwake, 65 Haw. at 56, 647 P.2d at 712 (emphasis added).  Thus, the number of prior mistrials is not considered in isolation.  Instead, the circuit court duly considered the circumstances of the jury deliberations, which included not only the offenses that were deliberated upon in each trial but also the nature of the jury communications in the earlier trials.  The circuit court was therefore not foreclosed from considering the number of opportunities a jury has had to reach a consensus on the issue of guilt as to the offenses that would be involved in a retrial.  That a jury had evaluated the reckless manslaughter charge only once before was thus relevant to the circuit court's evaluation of the second Moriwake factor, and the court did not abuse its discretion by taking it into consideration.

sixth jury communication asked, "If we sign the 'no[t] guilty' verdict form on the charge of murder in the 2nd degree, does it mean that Deedy is not guilty [of] the lesser charges of reckless manslaughter, 1st degree assault [and] 2nd degree assault?" And the eighth jury communication asked whether "reckless manslaughter [is] included in Murder in the Second Degree Charge or are they sepporate [sic]?" The circuit court may duly take into account its concern, founded upon these communications, that the jury was confused with the import of the recklessness state of mind in the court's instructions. Hinton, 120 Hawai'i at 278-79, 204 P.3d at 497-98 (holding that the circuit court did not abuse its discretion by finding the second Moriwake factor weighed in favor of retrial because the jury "seemed confused").[12] In light of the circuit court's

---

[12] In Hinton, 120 Hawai'i at 270, 204 P.3d at 489, the jury submitted communications during deliberations requesting the definition and application of a term related to the charge. When the jury proceeded to deadlock, the trial court declared a mistrial, and the defendant moved to dismiss the charges under Moriwake. Id. at 271, 204 P.3d at 490. In considering the second Moriwake factor, the trial court observed, "[A]ll in all, the questions [the jury] asked and their trouble following the evidence makes me feel that this factor weighs in favor of a retrial." Id. On review, the court in Hinton held that the circuit court did not abuse its discretion in finding that the second Moriwake factor weighed towards retrial. Id. at 279, 204 P.3d at 499. Thus, we have approved consideration of jury communications evincing confusion under Moriwake's second factor.

In apparent disagreement with this court's decision in Hinton, the dissent contends that, under our interpretation, "whenever jury communications indicate confusion, the State may be afforded another opportunity to retry the case" to correct strategic missteps that led to the jury's confusion. Dissent at 14. However, there is no indication here that the jury's confusion resulted from mistakes on the part of the State. We

(continued . . .)

conclusion regarding the legal and factual complexity of the case and that a retrial will focus solely upon a reckless state of mind, the court clearly did not exceed the bounds of reason in weighing this factor as "neutral" in its Moriwake analysis.[13]

### 3. The character of prior trials in terms of length, complexity and similarity of evidence presented

The circuit court determined that the length, complexity, and evidence presented weigh in favor of retrial. Deedy asserts that the lengthy prior trials—-the first trial lasting 23 days and the second trial 16 days--and the similarity of the evidence adduced at each trial weigh in favor of dismissal.

"A comparison between the evidence presented, witnesses testifying, and legal theories argued in each trial

---

(. . . continued)

also note that the circuit court ultimately concluded with regard to the second Moriwake factor that "this factor is neutral," which was decidedly not an abuse of discretion in light of our precedent. (Emphasis added.)

[13] The dissent argues that our holding may allow the State to "avoid some of the repercussions" of its "fail[ure] to obtain a conviction due to its unclear presentation of the facts." Dissent at 14. However, the jury communications in the second trial focused upon the complexities of the legal standards the jury was required to apply. It is the ultimate responsibility of the trial court, not the State, to ensure that the jury possesses "a clear and correct understanding of what it is they are to decide." State v. Adviento, 132 Hawai'i 123, 137, 319 P.3d 1131, 1145 (2014) (quoting State v. Hoey, 77 Hawai'i 17, 38–39, 881 P.2d 504, 525-26 (1994)). And it is the court, not the State, that is responsible for providing correct instructions on the law. Id. (citing State v. Locquiao, 100 Hawai'i 195, 205, 58 P.3d 1242, 1252 (2002)).

[is] relevant to the third Moriwake factor." Deguair, 136 Hawai'i at 88, 358 P.3d at 60. We note, however, that the length of previous trials, considered in and of itself, is not a strong indicator of whether the third Moriwake factor favors or disfavors a retrial. For example, in Hinton, this court agreed with the trial court's determination that, although the short length of the previous trial favored a retrial, the fact that the case was not complex ultimately weighed against a retrial. See Hinton, 120 Hawai'i at 271, 279, 204 P.3d at 490, 498. In Deguair, this court agreed with the trial court's reasoning that, even if the previous trials were somewhat long, the fact that the case was not complex weighed against a retrial. 136 Hawai'i at 89, 358 P.3d at 61. Evident in both Hinton and Deguair is the fact that the length of the previous trials, as an ingredient in the evaluation of the third Moriwake factor, must be viewed and analyzed in the context of the complexity of the case. See Hinton, 120 Hawai'i at 271, 279, 204 P.3d at 490, 498; Deguair, 136 Hawai'i at 88-89, 358 P.3d at 60-61.

The court in this case considered the length of the previous trials and observed that the two trials had been legally and factually complex:

> The two trials were legally complicated; the self-defense and defense of others instructions, alone, included some complex provisions. In addition, both trials were factually complicated, involving as they did, not one

> or two events, but a series of alleged events as witnessed in part by a number of persons, and without the benefit of a surveillance tape that contained any sound or that captured greater detail . . . Thus, the jury had to weigh credibility of numerous witnesses as to all events it deemed relevant, had to decide what the tape portrayed, had to determine what precisely had occurred, and then had to apply these facts to some complicated legal principles.

(Emphases added.)  As stated by the circuit court, not only did the second jury have to consider second-degree murder, its included offenses, and a felony firearm offense, it also had to evaluate, as to each of these offenses, whether self-defense or defense of others applied.  See Hinton, 120 Hawai'i at 279, 204 P.3d at 498 (agreeing with the trial court that the third Moriwake factor weighed against retrial in part because the first trial was not complicated).  Additionally, these complex legal principles had to be applied to facts and circumstances that, as the trial court noted, were subject to recounting by numerous witnesses and captured by a soundless and insufficiently detailed surveillance video.[14]

If this court were to accept Deedy's proposition, echoed by the dissent, Dissent at 23-24,--that longer and more complex previous trials should tip the third Moriwake factor in

---

[14]    Although the dissent does not dispute that the trial was complex, it argues that this consideration weighs in favor of dismissal.  Dissent at 23-24.  Our precedents clearly hold otherwise.  See Hinton, 120 Hawai'i at 279, 204 P.3d at 498; Deguair, 136 Hawai'i at 89, 358 P.3d at 61.  This is because trials that involved complicated issues may have a greater likelihood to be resolved by a second jury with a different complement of jurors than would trials that deadlocked on non-complicated issues.

favor of dismissal--then there will be a greater likelihood that the third Moriwake factor will favor dismissal of cases involving more serious charges, cases with a greater number of charged offenses or defendants, and cases involving offenses of more complexity in their alleged commission or in the applicable law, in contrast to cases of less seriousness.[15]  Thus, Deedy's argument that "lengthy prior trials . . . weigh[] in favor of dismissal under Moriwake" is inconsistent with this court's decisions in both Hinton and Deguair and would bring about incongruous results.

The circuit court also examined the difference in the presentation of evidence and the legal theories pursued between the first and second trials, stating that

> [w]hile many of the same witnesses and the same
> surveillance tape were presented at both trials, the second
> trial's evidence appeared to place greater emphasis upon
> [Deedy]'s alleged state of intoxication and the State's
> theory that the deceased already had sustained a gunshot

---

[15]     The dissent maintains that there is no "linear" relation such that cases involving serious charges or multiple defendants "necessarily result in longer and/or more complicated trials."  Dissent at 24.  However, we merely observe that there is a greater likelihood that lengthier trials will occur in such cases.  And at least one empirical study confirms that high-stake criminal litigation tends to involve longer trials.  See Barry Mahoney & Dale Ann Sipes, Toward Better Management of Criminal Litigation, 72 Judicature 29, 33-34 (1988) (detailing results of study that "not surprisingly" indicated "[t]he most serious felony charge trials-- homicide, rape and robbery--consistently take longer (both overall and in specific segments) than do theft, burglary and narcotics cases").

> wound before he and [Deedy] fell to the restaurant
> floor.[16]

(Emphasis added.)

Given that the circuit court duly considered the differences "between both trials with respect to the legal theories, evidence presented, and witnesses who testified," Deguair, 136 Hawaiʻi at 88–89, 358 P.3d 60–61, and in light of its determination that the previous trials were both factually and legally complex, the circuit court plainly did not abuse its discretion in determining that the third Moriwake factor favors retrial.[17]  See Hinton, 120 Hawaiʻi at 279, 204 P.3d at 498;

---

[16]    The dissent contends that the circuit court abused its discretion when evaluating the third Moriwake factor by mistakenly equating the different emphases that the State placed upon the evidence in the two trials with dissimilarities in the evidence presented in the trials.  Dissent at 20-21.  The dissent, however, misapprehends the circuit court's analysis.  The court's allusion to differing emphases in the two trials referred to differences in the legal theories that the State presented, which our precedents require a court to account for when analyzing the third Moriwake factor.  See Deguair, 136 Hawaiʻi at 88, 358 P.3d 60 ("A comparison between the . . . legal theories argued in each trial [is] relevant to the third Moriwake factor.").

[17]    The dissent in its evaluation of the second and third Moriwake factors faults the State's trial strategy of focusing its efforts upon obtaining a murder conviction rather than a manslaughter conviction.  Dissent at 15, 22 (contending that dismissal is called for because the State "deliberately and strategically chose not to focus on whether Deedy could be convicted of reckless manslaughter" "and instead fixate[d] its efforts on pursuing a murder conviction").  Deedy was indicted by a grand jury that charged him with murder in the second degree (along with the related firearm offense).  It is unclear if it is the dissent's position that the State is required to divide its advocacy in a prosecution between the charged offense and included offenses if it wishes to avoid dismissal when a jury deadlocks on an included offense.  Even assuming this were the case, the evidence as presented at trial indisputably supported the submission of an included offense instruction on reckless manslaughter, the jury in fact deadlocked on this charge, and Deedy has not challenged the circuit court's determination

(continued . . .)

Deguair, 136 Hawai'i at 89, 358 P.3d at 61 (reasoning that the third Moriwake factor favored dismissal because the case was not complex and deferring to the circuit court's findings because that court took into account the various considerations that bear upon this factor).

### 4. The likelihood of any substantial difference in a subsequent trial, if allowed

The circuit court concluded that this factor favors retrial, reasoning that, "[i]n a third trial, the prosecution will focus exclusively upon a reckless state of mind, which carries different requirements than does an intentional or knowing state of mind." The court reasoned that "the greater state of mind . . . will otherwise be irrelevant, meaning that evidentiary emphasis and argument during that third trial will differ from what they were when the focus was the charged offense." In addition, the circuit court determined that, if the government meets its burden at the third trial, the defenses of self-defense and defense of others would be rendered inapplicable.

---

(. . . continued)

that there was a rational basis in the evidence for the jury to be instructed on this offense at the second trial. Thus, the State's trial strategy did not preclude the jury from consideration of reckless manslaughter at the second trial.

Deedy disagrees with the circuit court, contending that, not only has the State consistently taken the position that its evidence does not support a finding that Deedy harbored a reckless state of mind, there is also "no reason to think the witnesses will be different, the videotape will depict anything different, or the experts will opine something new."  The State asserts that the presentation of the evidence at a retrial-- which would focus on whether Deedy harbored a reckless state of mind when he discharged the fatal shot--will substantially differ from the prior trials.

The circuit court concluded that the evidence that will be presented at a third trial will be tailored to addressing the specific elements of the recklessness state of mind,[18] and as such, the self-defense and defense of others justifications will have a more limited application.  See generally HRS § 703-310 (1993); State v. Culkin, 97 Hawaiʻi 206,

___

[18]     Deedy takes issue with the circuit court's reasoning that a third trial would allow the State to present evidence and argument on recklessness when the State, from Deedy's point of view, "had opted not to adduce or advance" recklessness at the prior trials.  However, a more serious state of mind subsumes within it all less serious states of mind.  For example, "[w]hen the law provides that recklessness is sufficient to establish an element of an offense, that element also is established if, with respect thereto, a person acts intentionally or knowingly."  HRS § 702-208 (1993). In this case, by introducing evidence to support its argument in the first two trials that Deedy harbored an intentional state of mind, the State was in effect also introducing evidence that Deedy acted with a knowing, reckless, or negligent state of mind.  Id.  Thus, it is incorrect to contend, as Deedy does, that the State "opted not to adduce" evidence of the recklessness state of mind when it focused its case on the intentional state of mind.

216, 35 P.3d 233, 243 (2001) ("HRS § 703-310 quite plainly instructs that self-defense is not available as justification where a defendant believes that the use of force is necessary, but is reckless or negligent in so believing."). Deedy places inordinate emphasis on his claim that the evidence at a third trial will not be substantially different from that introduced at the first and second trials. While "[t]his court has indicated that whether the evidence submitted in a subsequent trial would be substantially different from prior trials is relevant" in evaluating the fourth Moriwake factor, this court has never held that it is dispositive as to whether this factor favors retrial. Deguair, 136 Hawaiʻi at 89, 358 P.3d at 61.

The primary focus of this factor is the likelihood of any substantial difference in a subsequent trial, which includes not only the evidence presented, but also the theory of guilt, the applicable defenses, and the likelihood of a verdict as opposed to a hung jury. See, e.g., id. (noting that not only was evidence to be offered at a third trial substantially the same as the second trial, it was also not likely that there would be a substantial difference in the result of a third trial). Here, the circuit court concluded that the differing emphasis of the prosecution's case, as well as the manner in which the evidence will be characterized (even assuming that the evidence will closely parallel the evidence in the first and

second trials), could reasonably make a substantial difference in a subsequent trial. See id.; Hinton, 120 Hawai'i at 279, 204 P.3d at 498. Thus, this is unlike Moriwake, in which the court stated, "There was no indication that a third trial would proceed in a manner any different than did the previous two." Moriwake, 65 Haw. at 57, 647 P.2d at 713. Based on the circuit court's analysis, it cannot be said that the court abused its discretion in weighing this factor in favor of retrial.

## 5. The trial court's own evaluation of relative case strength

As to the fifth factor, the circuit court concluded that the "[r]esolution of this case is based in large part upon credibility and the factual application of the self-defense defense provisions during the series of alleged events" and that the evidence would be sufficient either to convict or acquit Deedy "depending upon who and what a jury elected to believe." Thus, the circuit court rejected the argument that the government's case was inherently flawed or too weak to support a conviction, and therefore, the court determined that this factor favored retrial. Deedy, on the other hand, argues that the State's evidence is not compelling or weighty and that his defenses are not implausible; thus, Deedy believes that this factor weighs in favor of dismissal. The State contends that the circuit court did not abuse its discretion with respect to the fifth factor because the jury rejected Deedy's argument that

his conduct was justified and because a reasonable jury could find that Deedy acted with a reckless state of mind.

The circuit court's findings and conclusions in its written order reflect that it duly considered the evidence adduced at trial and, cognizant of Moriwake's dictates, that it impartially evaluated each party's case and weighed these considerations against fundamental fairness to Deedy. See Hinton, 120 Hawai'i at 280, 204 P.3d at 499 (although the trial court did not make a specific finding or conclusion on the fifth factor, in its final analysis, the court "'balanced' the relative case strength factor and determined it weighed in favor of retrial"). Indeed, the circuit court in this case expressly stated in its Moriwake ruling that it was taking judicial notice of "all pre-trial matters," "jury selection, both trials, jury communications, and all post-trial matters." The court, in clear recognition of Moriwake, also stated that it was "mandated to balance the interest of the State against fundamental fairness to a defendant with the added ingredient of the orderly functioning of the court system." The circuit court having overseen both trials and having closely evaluated the evidence concluded that the State's evidence was of sufficient strength for a jury to return a guilty verdict on the reckless manslaughter charge. This is in contrast to what the trial court concluded in Deguair, where the quality of the State's

48

evidence was so lacking that this court agreed with the circuit court's conclusion that relative case strength favored dismissal.  See Deguair, 136 Hawai'i at 90, 358 P.3d at 62.  There is no indication in the record to refute the circuit court's determination that the evidence was sufficiently strong to support a conviction on retrial.  Accordingly, the trial court did not abuse its discretion in concluding that its evaluation of relative case strength favored retrial.

### 6. The professional conduct and diligence of respective counsel, particularly that of the prosecuting attorney

Because "[c]ounsel acted with diligence and did the best job they could do," the circuit court concluded that this factor weighs in favor of retrial.  For the same reason, Deedy contends that this factor weighs in favor of dismissal as there can be no inference that the State can litigate its case any better at a retrial.  The State argues that the circuit court did not abuse its discretion with respect to this factor and claims that Deedy "ignores the practical consequences of the jury acquitting him of murder," which "will require the deputy prosecutor to present the case in a different manner."

In Hinton, 120 Hawai'i at 280, 204 P.3d at 499, "the trial court determined that this factor weighed against retrial inasmuch as the attorneys for both parties 'did a good job.'"  Because "the ICA did not contend that this factor weighed in

favor of retrial," this court accepted the circuit court's analysis of this factor without independently evaluating it. Id. The same is true in Deguair: because neither party challenged the circuit court's determination that the prosecutor's diligent and professional presentation of the State's case weighed against retrial, this court did not consider that determination. Deguair, 136 Hawai'i at 90, 358 P.3d at 62.

The quality of counsel's professional conduct and the level of their diligence could weigh either in favor or against retrial depending on the circumstances and specific facts of the case, including the result of the evaluation of other relevant Moriwake factors. For example, when it is extremely unlikely that there would be a substantial difference in a subsequent trial, as was the case in Hinton and Deguair, the trial court may determine that the professional conduct and diligence of counsel would weigh against retrial. See Deguair, 136 Hawai'i at 89, 358 P.3d at 61—62; Hinton, 120 Hawai'i at 279, 204 P.3d at 498—99. This is in part because, in such an instance, it would appear equally unlikely that counsel's diligence and professionalism would make any difference in a retrial. On the other hand, in cases where there is a likelihood of a substantial difference in a subsequent trial, the degree of

counsel's diligence and professionalism may be found to weigh in favor of retrial.  In such cases, counsel's diligence and professionalism would still play a significant role and may influence the outcome of a retrial.

In this case, the circuit court's conclusion as to the sixth Moriwake factor is consistent with, and supported by, the circuit court's other finding that it is likely that a third trial would result in substantial difference in this case because the presentation of the evidence at a third trial will be tailored to addressing the recklessness state of mind and because the self-defense and defense of others justifications could be rendered inapplicable.  See supra.  Accordingly, the circuit court did not abuse its discretion in holding that the sixth Moriwake factor favors retrial.  See Deguair, 136 Hawai'i at 89, 358 P.3d at 61; Hinton, 120 Hawai'i at 279, 204 P.3d at 498.[19]

---

[19]    Deedy further contends that two other factors bear relevance to the balancing test under Moriwake: (1) the fact that the State has expressly and consistently maintained that it has no evidence to support a reckless manslaughter charge--the same charge that will be the subject of a third trial--and (2) the expenses and resources that have been used in litigating this case are disproportionately high as compared to other cases involving similar charges and that a third trial will only elevate costs further for both Deedy and the public.  We note that Deedy raises these factors for the first time on appeal, and, as such, the circuit court had no opportunity to consider these factors in exercising its discretion pursuant to Moriwake.  In any event, the State did, in fact, raise in the second trial that the jury could find that the evidence it presented supported conviction on the lesser included offenses.  With respect to costs, the expense of the trial would

(continued . . .)

### 7. The circuit court did not abuse its discretion

While this court stated in Moriwake that "in most cases, serious consideration be given to dismissing an indictment with prejudice after a second hung jury mistrial[,] this is not to say that the preclusion of even a second trial or the allowance of a third or even more trials would not be appropriate in certain circumstances."  Moriwake, 65 Haw. at 57, 647 P.2d at 713.  This court later reaffirmed that "the Moriwake court squarely placed the discretion in the hands of the trial court to determine under which 'certain circumstances' dismissal after one or more mistrials would be appropriate."  Hinton, 120 Hawai'i at 279, 204 P.3d at 498.  Axiomatic in Hinton, therefore, is that the trial courts also are provided with the discretion to determine under which "certain circumstances" retrial after one or more mistrials would be appropriate.  See id.  In this case, the circuit court, after careful consideration of all of the relevant Moriwake factors and in the proper exercise of its discretion, determined that under the circumstances of this case, a retrial after two prior mistrials is the outcome that the Moriwake framework provides.  See id.

---

(. . . continued)

appear to be contraindicative of whether a third trial should be allowed, as costs may be related to the complexity of the case.

We will not disturb this determination because it is manifest that the circuit court duly considered the rules and principles of law underlying Moriwake. The circuit court was aware of the applicable factor-balancing test, analyzed each factor in light of the facts and circumstances of this case, and weighed the factors in accordance with the canons of Moriwake. See supra. Thus, it cannot be concluded that the circuit court "disregard[ed] rules or principles of law or practice to the substantial detriment of a party litigant." Deguair, 136 Hawai'i at 84-85, 358 P.3d at 56-57 (quoting Hinton, 120 Hawai'i at 273, 204 P.3d at 492).

Further, it is evident from the circuit court's Moriwake ruling that the findings and conclusions it made with respect to each of the Moriwake factors are based on facts in the record, reasonable inferences from the record, and a logical process of reasoning. See, e.g., id. at 88—90, 358 P.3d at 60—62 (concluding that the circuit court did not exceed the bounds of reason because its Moriwake ruling was based on findings and conclusions supported by the record and obtained by duly considering and weighing the relevant Moriwake factors). Accordingly, it cannot be said that the circuit court in this case "exceed[ed] the bounds of reason" in its findings and conclusions with respect to the Moriwake factors and the manner

53

in which the factors were weighed and balanced.  Id. at 84-85,
358 P.3d at 56-57 (quoting Hinton, 120 Hawai'i at 273, 204 P.3d
at 492).

We reaffirm that in cases involving a trial court's
application of the Moriwake factor-balancing test, deference is
accorded to the court's findings and conclusions.  Moriwake, 65
Haw. at 56, 647 P.2d at 712.  As this court has underscored,
Moriwake rulings are "accord[ed] deference . . . for much the
same reason that [an appellate court] will seldom question the
propriety of a hung jury mistrial declaration."  Id.[20]

---

[20]    As this court stated,

> there are especially compelling reasons for allowing the
> trial judge to exercise broad discretion in deciding
> whether or not "manifest necessity" justifies a discharge
> of the jury.  On the one hand, if [the judge] discharges
> the jury when further deliberations may produce a fair
> verdict, the defendant is deprived of his "valued right to
> have his trial completed by a particular tribunal."  But if
> [the judge] fails to discharge a jury which is unable to
> reach a verdict after protracted and exhausting
> deliberations, there exists a significant risk that a
> verdict may result from pressures inherent in the situation
> rather than the considered judgment of all the jurors. . .
> . The trial judge's decision to declare a mistrial when
> [the judge] considers the jury deadlocked is therefore
> accorded great deference by a reviewing court.

Moriwake, 65 Haw. at 52-53, 647 P.2d at 710 (quoting Arizona v. Washington,
434 U.S. 497, 509-10 (1978)).  In Arizona, upon which the Moriwake court
relied, the Supreme Court noted that the reason "for this deference in the
'hung' jury situation is that the trial court is in the best position to
assess all the factors which must be considered in making a necessarily
discretionary determination whether the jury will be able to reach a just
verdict if it continues to deliberate."  434 U.S. at 510 n.28 (emphasis
added).  The same is true in the Moriwake context because the trial court is
the tribunal most intimately acquainted with the facts and circumstances of
the case and has been personally involved in the procedural history of the
case, including the conduct of the prior trials, and the development of the

(continued . . .)

54

In view of the foregoing principles, and according appropriate deference to the findings and conclusions of the circuit court in this case, the circuit court did not exceed the bounds of reason or disregard rules or legal principles when it concluded that all of the following factors--the severity of the offense, character of prior trials, likelihood of any substantial difference in a subsequent trial, relative case strength, and the quality of counsel--did not favor dismissal. Id.; Deguair, 136 Hawai'i at 84-85, 358 P.3d at 56-57. In a similar vein, the circuit court did not exceed the bounds of reason or disregard rules or legal principles when it determined that one factor--the number of prior trials--has a neutral effect on whether a retrial is appropriate. Deguair, 136 Hawai'i at 84-85, 358 P.3d at 56-57 (quoting Hinton, 120 Hawai'i at 273, 204 P.3d at 492).

Accordingly, the circuit court did not abuse its discretion in denying Deedy's motion to dismiss after "balancing the interest of the state against fundamental fairness to a

_____

(. . . continued)

record; has seen firsthand and independently appraised the evidence and the credibility of the witnesses; and has closely observed the jury and the manner in which the jury deliberated. Thus, the trial court is clearly in the "best position" to consider and weigh the Moriwake factors relevant to determining whether a case should be retried or dismissed with prejudice. Cf. Arizona, 434 U.S. at 510 n.28.

defendant with the added ingredient of the orderly functioning of the court system." Moriwake, 65 Haw. at 56, 647 P.2d at 712.

### E. Supremacy Clause Immunity

Lastly, Deedy contends that the Supremacy Clause of the U.S. Constitution shields him from prosecution under the criminal laws of Hawai'i. Deedy maintains that he is immune from prosecution for a violation of a state's criminal laws because his actions arose out of his performance of his duty as a federal agent. Deedy argues that Supremacy Clause immunity applies to him because he did not exceed his authority or wantonly violate state criminal law when he fired the fatal shot. Deedy asserts that "state law is irrelevant" in analyzing whether he is immune and that "violations of agency policy," "errors of judgment," and his "mistakes of fact" do not suffice to deny him of Supremacy Clause immunity. Accordingly, Deedy concludes that the circuit court should have granted his dismissal motion based on federal constitutional law.

Under the U.S. Constitution, a federal officer is entitled to Supremacy Clause immunity "only when his acts are both (1) authorized by the laws of the United States and (2) necessary and proper to the execution of his responsibilities." Morgan v. California, 743 F.2d 728, 731 (9th Cir. 1984). The court must view the evidence "in the light most favorable to the state." Id. at 733. When there is "a conflict of evidence" as

to the elements of Supremacy Clause immunity (e.g., whether the defendant's conduct is authorized by federal law), "the state court ha[s] jurisdiction," and the defendant would not be immune from state prosecution.  United States ex rel. Drury v. Lewis, 200 U.S. 1, 7-8 (1906).

Special Agent Matthew Golbus, the resident agent of the Diplomatic Security Service (DSS) in the Honolulu resident office, testified that the authority for special agents with the DSS comes from 22 U.S.C. 2709 (2012).[21]  Thus, Deedy's general

---

[21]  At the time of the incident, 22 U.S.C. 2709 stated in relevant part as follows:

**(a) General authority**

Under such regulations as the Secretary of State may prescribe, special agents of the Department of State and the Foreign Service may--

**(1)** conduct investigations concerning illegal passport or visa issuance or use;

. . .

**(2)** obtain and execute search and arrest warrants, as well as obtain and serve subpoenas and summonses issued under the authority of the United States;

**(3)** protect and perform protective functions directly related to maintaining the security and safety of [designated officials and their family members and foreign missions];

. . .

**(4)** if designated by the Secretary and qualified, under regulations approved by the Attorney General, for the use of firearms, carry firearms for the purpose of performing the duties authorized by this section; and

(continued . . .)

duties and the scope of his authority were defined and delineated by 22 U.S.C. § 2709, and, as relevant to the facts of this case, Deedy had the authority to "make arrests . . . for any offense against the United States committed in [his] presence, or for any felony cognizable under the law of the United States."  22 U.S.C. § 2709(a)(5).

Deedy maintains that his actions were authorized by 18 U.S.C. § 111(a)(1) (2012), which provides that whoever "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title <u>while engaged in or on account of the performance of official duties</u>" is punishable under federal law.  (Emphasis added.)  The argument appears to be that Deedy was authorized to arrest the deceased and to use deadly force in effectuating such arrest because the deceased assaulted him while he was engaged in the performance of official duties--a course of conduct prohibited by 18 U.S.C. § 111(a)(1).

---

(. . . continued)

> **(5)** <u>make arrests without warrant for any offense against the United States committed in their presence, or for any felony cognizable under the laws of the United States</u> if they have reasonable grounds to believe that the person to be arrested has committed or is committing such felony.
>
> . . . .

22 U.S.C. § 2709 (2012) (underlining added) (footnote omitted).

However, Deedy does not explain how a night of socializing and drinking alcoholic beverages in Waikīkī with friends was part of his "official duties" as a State Department agent within the meaning of that phrase in 18 U.S.C. § 111(a)(1) such that he was authorized by 18 U.S.C. § 111 and 22 U.S.C. § 2709 to arrest the deceased and, if necessary, to inflict deadly force upon him.  Cf. Cunningham v. Neagle, 135 U.S. 1, 52–53 (1890) (federal marshal was authorized to fatally shoot an individual who attacked a Supreme Court justice whom the marshal was tasked to protect); Wyoming v. Livingston, 443 F.3d 1211, 1226 (10th Cir. 2006) (agents who trespassed on private property were authorized by the Endangered Species Act to monitor wolves and were thus performing their official duties).  That Deedy was not engaged in the performance of his official duties is substantiated by Special Agent Golbus's testimony that DSS agents are specifically authorized, pursuant to internal State Department policy, to carry firearms "[i]n the performance of their duties with respect to investigating passport and visa issuance or use in performing protective functions."  On the night of Deedy's altercation with the deceased, Deedy was not investigating passport and visa issuance or performing protective functions or any other conduct enumerated in 22 U.S.C. § 2709(a); rather, he was drinking alcoholic beverages at multiple bars and then ate at a fast-food restaurant in Waikīkī.

59

Because Deedy does not provide any federal authority for the proposition that his activities that evening were part of his official duties, this court need not reach the issue of whether Deedy's actions were "necessary and proper to the execution of his responsibilities." However, even assuming that Deedy was performing an official duty when he shot the deceased, Deedy does not explicate how his conduct was necessary and proper, under the circumstances, to the execution of that duty. Even Deedy's expert witness testified that a federal agent "just can't shoot anybody just 'cause [that person] say[s] [he is] going to kill [the agent] and [he] starts coming at [the agent]." Deedy's expert witness further testified that federal agents "should not instigate confrontation" and that they should not "use deadly force in a situation in which [they] ha[ve] created the need for such force."

Finally, even assuming that the evidence was conflicting as to whether Deedy's conduct was authorized by federal law or as to whether his actions were necessary and proper to the execution of his responsibilities, "the state court" has jurisdiction, and Deedy would not be immune from state prosecution. Lewis, 200 U.S. at 7-8. Accordingly, Deedy is not immune from state prosecution under the Supremacy Clause.

## V. CONCLUSION

Based on the foregoing, we affirm the circuit court's (1) Order Denying Defendant Deedy's Motion to Dismiss Under State v. Moriwake; (2) Order Denying Defendant Deedy's Motion to Dismiss Under the United States Constitution; (3) Order Denying Defendant Deedy's Motion to Dismiss Under the Hawai'i Constitution; and (4) Order Denying Defendant Deedy's Motion to Dismiss Under Haw. Rev. Stat. §§ 701-109, 701-110, and 701-111. This case is remanded to the circuit court for further proceedings consistent with this opinion.

Thomas M. Otake and
Davis L. Livingston
for petitioner

Donn Fudo
for respondent

/s/ Mark E. Recktenwald

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

